**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RHONDA D. MCCULLAR,               )
                                  )
          Plaintiff,              )
                                  )
vs.                               )          **Case No. 09-cv-440-GKF-TLW**
                                  )
MICHAEL J. ASTRUE,                )
**Commissioner of Social Security** )
**Administration,**                )
                                  )
          Defendant.              )

### REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Rhonda McCullar seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claims for disability insurance and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A).[1]  As set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

### Background

Plaintiff was born on June 12, 1954, and was 53 years old on the date of the hearing before the Administrative Law Judge ("ALJ"). [R. 29]. She has a high school education and was married to Oscar McCullar from July 21, 1972 until February 1, 1980, when they divorced. [R. 152]. No children were born of the marriage. [R. 152]. Plaintiff is 5'6" tall and weighs 150 pounds. [R. 160].

---

[1] Plaintiff's applications for disability insurance benefits and SSI were denied initially and on reconsideration. A hearing before Administrative Law Judge Lantz McClain was held on April 14, 2008. [R. 25]. By decision dated July 14, 2008, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied plaintiff's request for review. The decision of the Appeals Council represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff filed her application for disability on February 10, 2006, alleging an onset date of December 13, 2005. [R. 151]. The relevant adjudicated period is December 13, 2005 through July 14, 2008. [R. 14, 24].

Plaintiff's work history includes employment as a crew leader and employee trainer for Hardee's Fast Food, from 1993 to 1997; a flagger and "water girl" for a construction company for six months; a pottery scraper for Frankoma Pottery, for six months in 1997; and a packager and palletizer for Nonni's Food Company, from 1998 to 2005. [R. 32-35, 218]. During her employment with Nonni's, plaintiff worked in the finished good division, wrapping and transferring Biscotte cookies from production to packing. [R. 174]. Before the company installed wrapping machines, plaintiff lifted 40 pound rolls used to wrap pallets. [R. 32, 174]. Aside from the consultative reports ordered by the Commissioner, the remaining medical records consist of test results, evaluation notes and reports of various workers' compensation doctors from claims filed by plaintiff for job-related injuries, primarily reported during her work at Nonni's. Plaintiff's workers' compensation claims included injuries to her left knee in 1986, right ankle in 1999 and in 2002, left shoulder, both wrists and both feet in 2004. [R. 391]. Plaintiff contends Nonni's terminated her employment on December 12, 2005, the day before her alleged disability onset date, because she proceeded to court on her workers' compensation claim. [R. 161]. Other evidence shows that plaintiff had a broken nose on three separate occasions (twice in accidents and once in a bar fight), left knee arthroscopic surgery in 1986, and a gynecological D&C in 1980. [R. 326, 358]. Plaintiff has smoked since she was 14 years old, and currently smokes a pack of cigarettes per day. [R. 31, 358]. In 2003, plaintiff was convicted for driving under the influence of alcohol, and was sentenced to community service. [R. 359].

Plaintiff alleged her impairments to be chronic obstructive pulmonary disease; pain in her left shoulder, both wrists, both feet and ankles; a pinched nerve in her neck; and depression. [R. 18, 28-29, 35-41].

### Decision of the Administrative Law Judge

In assessing plaintiff's qualification for benefits, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 13, 2005, and he found her severe impairments to be back and wrist pain, chronic obstructive pulmonary disease, and remote knee surgery. He found that plaintiff's depression is non-severe and that singly and in combination these impairments do not meet or medically equal any of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1. [R. 16-17]. The ALJ determined that plaintiff retains the residual functional capacity ("RFC")[2] to perform light exertional work but that she must avoid doing work above the shoulder level and work requiring the constant repetitive use of her hands, such as keyboarding.[3] [R. 17]. He found plaintiff's testimony not entirely credible regarding the limitations of her impairments and the limitations of her ability to perform daily activities, based in part on the discrepancies between her alleged symptoms and the objective medical evidence of record. [R. 22]. The ALJ consulted and relied on a vocational expert who testified that plaintiff's past work as a pottery scraper was at a sedentary exertional level and unskilled; her position as a flagger was at a light exertional level and

---

[2] RFC is defined as the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs. 20 C.F.R. pt. 404, subpt. P, App. § 200.00(c).

[3] As specified by the ALJ, light exertional work involves lifting or carrying no more than 20 pounds occasionally, and up to 10 pounds frequently, standing and /or walking at least 6-hours out of an 8-hour workday, and sitting at least 6 hours out of an 8-hour workday. [R. 17]. See SSR 83-10.

unskilled; and her position as a fast food worker was light exertion and semi-skilled.  In comparing

plaintiff's RFC with the physical and mental demands of this work, the ALJ found that plaintiff was

able to perform her past work as a pottery scraper, fast food worker and flagger, but she was unable

to perform her past work at Nonni's, because the Nonni's job was performed at a medium exertional

level and did not satisfy the restrictions imposed by his RFC assessment.  [R. 23, 53].  The ALJ made

his determination at step four of the five-step sequential analysis required under Williams v. Bowen,

844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[4]  [R. 23-24].

### Burden of Proof and Standard of Review

It is plaintiff's burden to prove her alleged disability.  To do so, plaintiff must show she is

unable to return to the particular work she performed within the past 15 years and to her former

employment as that work is generally performed throughout the national economy.  Andrade v.

Secretary of Health & Human Services, 985 F.2d 1045, 1051 (10th cir. 1993).  To prove a disability,

the plaintiff must establish a "medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The role of the Court in reviewing the decision of the Commissioner under the provisions

of 42 U.S.C. § 405(g) is limited to evaluating whether the record contains substantial evidence to

support the Commissioner's findings, and to determine whether the correct legal standards were

---

[4]  The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience.  Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52.)

applied.  See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v.

Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d

1027, 1028 (10th Cir. 1994).  Substantial evidence to support the Commissioner's decision that

plaintiff is not disabled is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.  Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(quoting Richardson

v. Perales, 402 U.S. 389, 401 (1971)).  The Court may neither reweigh the evidence nor substitute

its judgment for that of the Commissioner, but the Court has a duty to carefully consider the entire

record and make a decision based on the record as a whole.  Dollar v. Bowen, 821 F.2d 530, 532

(10th Cir. 1987).  Even if the Court would have reached a different conclusion, if supported by

substantial evidence, the Commissioner's decision stands.  Hamilton v. Secretary of Health &

Human Services, 961 F.2d 1495 (10th Cir. 1992).

### Issues Raised

Plaintiff raises two issues on appeal:

First:          Whether the ALJ erred as a matter of law in failing to address the
                opinion of Dr. Harold Battenfield, D.O.  [Dkt. # 18 at 6].

Second:         Whether the ALJ's RFC assessment is supported by substantial
                evidence.  [Dkt. # 18 at 6].

### Discussion

As her first issue, plaintiff contends that Dr. Battenfield was her treating physician and that

the ALJ erred in disregarding Dr. Battenfield's opinion and in failing to explain what weight he gave

to Dr. Battenfield's opinion.  Plaintiff first argues that the ALJ failed to apply the treating physician

rule; however, Dr. Battenfield is not a treating source for social security purposes.[5]  Under the

regulations, a treating physician is someone who either presently, or in the past, has provided

medical treatment to a disability claimant in the context of an ongoing relationship.  20 C.F.R. §§

404.1502, 416.902.[6]  Dr. Battenfield is a nontreating source because he evaluated plaintiff's left wrist

and right hand solely for workers' compensation purposes.[7]  [R. 163].  This issue is addressed further

below, after Dr. Battenfield's findings are summarized and the issue of whether or not the ALJ

considered those findings is addressed.

In his evaluation of plaintiff's workers' compensation claim, Dr. Battenfield could not find

any objective medical reason for plaintiff's discomfort to her left wrist and right hand other than the

"repetitive motion" of folding boxes all day at her job with Nonni's.  [R. 222, 225].  On May 17,

---

[5] As announced in Watkins v. Barnhart, 350 F.3d 1297 (10th Cir. 2003), when considering a treating source opinion, an ALJ must first determine if the opinion is entitled to controlling weight. Id. at 1300.  In so doing, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether the opinion is consistent with other substantial evidence in the record.  If the ALJ determines the opinion is deficient in both of these respects, then it is not entitled to controlling weight.  The ALJ's next step is to determine what weight, if any, the opinion deserves.  Id. at 1300-01.  Treating physician opinions are still entitled to deference and the ALJ must give good reasons in his decision for the weight he ultimately assigns considering the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  Id.

[6]  A treating physician is defined as someone:

who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with [a physician] when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  Id.

[7]  The regulations define a non-treating physician as one "who has examined you but does not have, or did not have, an ongoing treatment relationship with you."  Id.

6

2004, X-rays on plaintiff's hands were negative for osseous pathology.[8]  On June 7, 2004, an EMG

revealed no evidence of cervical radiculopathy or carpal tunnel syndrome.  [R. 224].  Dr. Battenfield

found no justification for an MRI, surgery or additional diagnostic studies on plaintiff's left wrist.

His report was based on a functional capacity exam that he recommended and reviewed, and he

dismissed plaintiff from his care to return to work at Nonni's.  [R. 222].  On August 5, 2004, Dr.

Battenfield issued his report:

> Permanent restrictions consist of no lifting over 10 pounds right hand or pushing or
> pulling over 20 pounds.  Also wear her left wrist splint at all times. . . Utilizing the
> AMA Guides to Evaluation of Permanent Partial Impairment, Fifth Edition, a
> permanent partial impairment of 5% is given to her left wrist.  This is based upon my
> familiarity with Ms. McCullar, review of the EMG and FCE reports as well as access
> to my office notes.

[R. 222].

As to the consideration given to Dr. Battenfield's findings, contrary to plaintiff's contention,

the ALJ did take Dr. Battenfield's test results and evaluation into consideration in assessing

plaintiff's RFC and in his decision that plaintiff is not disabled.  The ALJ found:

> The claimant was diagnosed with carpal tunnel syndrome of the left wrist in May
> 2004; however, X-rays of the left wrist were negative, and EMG testing in June 2004
> was negative.  The claimant was diagnosed with left first dorsal compartment
> tendonitis and advised to continue to regular duties, and in July 2004 she reported
> that she could work so long as she used her wrist splint and therefore was not
> considered a surgical candidate.  Continued complaints of left wrist discomfort were
> made despite negative EMG studies, negative X-ray interpretations and attainment
> of maximum medical improvement.

[R. 19].  Thus, the ALJ specifically considered the test results and Dr. Battenfield's evaluation.

Moreover, in assessing plaintiff's RFC, the ALJ placed two restrictions on his RFC to

---

[8]  Osseous pathology is a disease process that causes some form of destruction of the bone.
See www.medical-dictionary.com/osseous.

perform light work:  (1) to avoid "work above the shoulder level," and (2) "no constant use of the hands for such repetitive tasks such as keyboarding."  [R. 17].  As discussed above, the ALJ's decision not to identify Dr. Battenfield as plaintiff's treating physician was proper and, as a result, the ALJ did not need to explain the weight given to Dr. Battenfield's report.  Again, the only time plaintiff was seen by Dr. Battenfield was in connection with her workers' compensation claim for injury to her left wrist and right hand.  Plaintiff saw Dr. Battenfield on only three or four occasions during May and June of 2004, and she saw him for no other reason than to evaluate her work-related injury.  Although the regulations require an ALJ to "give good reasons" in his decision as to the weight applied to a treating physician's opinion (20 C.F.R. § 416.927(d)(2)), in order to trigger this requirement, Dr. Battenfield must, in fact, have been a treating physician.  Since he is not considered a treating source under the regulations, the ALJ was not required to explain the reasons for the weight he gave his report; instead, he need only have considered it, which he did.  See e.g. McTaggart v. Astrue, 342 Fed.Appx. 373, 374(10th Cir. 2009) (unpublished).[9]

Plaintiff also faults the ALJ in failing to accept that portion of Dr. Battenfield's report that contains the physical functional assessment of plaintiff, which restricted her to not lifting or carrying over 10 pounds, thus limiting her to sedentary work, and Dr. Battenfield's opinion that she has a permanent partial impairment of 5% to her left wrist.  The undersigned disagrees.  The ALJ need not accept Dr. Battenfield's functional assessment since it was provided solely for her workers' compensation claim and related only to her work at Nonni's.  The ALJ did not include plaintiff's work at Nonni's in his step four determination that plaintiff was able to perform her past relevant

---

[9]  Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1:  10th Cir. R. 32.1.

work. Whether a social security claimant is disabled is an issued reserved to the Commissioner. 20
C.F.R. §§ 404.1527(e), 416.927(e). The undersigned finds no merit in plaintiff's first issue on
appeal.

As to her second issue, plaintiff contends that the ALJ's RFC assessment for light exertional
work was not based on substantial evidence because it conflicts with Dr. Battenfield's report that
plaintiff has a permanent restriction on lifting or carrying more than 10 pounds and supports
plaintiff's claim that her RFC should be limited to sedentary work. Plaintiff contends Dr. David
Nonweiler agreed with Dr. Battenfield's opinion regarding plaintiff's permanent restrictions and that
these combined opinions "overwhelming contradict the ALJ's light RFC." [Dkt. # 18 at 13]. The
undersigned disagrees.

Foremost, both Dr. Battenfield and Dr. Nonweiler examined plaintiff for workers'
compensation purposes. Thus, their reports are from nontreating physicians. [R. 163, 164, 327].
Dr. Nonweiler's report was in response to questions posed by a workers' compensation court. It
states:

> In considering the Court's questions, I think that it is possible that the patient's
> complaints are related to repetitive use of her arm. I do not think that she is [in] need
> of additional medical treatment. I do not think referral for evaluation of her hand
> would be of any benefit either. I do not think that she needs further medical
> treatment and would not recommend this. I do not think that any diagnostic testing
> would be useful in this situation. She does have permanent restrictions from Dr.
> Battenfield, which I think are possible, but I do not think any further medical
> treatment is going to significantly change her condition, and she understands this.

[R. 327]. Plaintiff had no other contact with Dr. Nonweiler. He provided no treatment, nor was
there any ongoing doctor-patient relationship. Moreover, the ALJ took Dr. Nonweiler's examination
notes into consideration in formulating his decision, stating:

Medical evaluation by David E. Nonweiler, M.D., dated February 28, 2005 revealed

9

no carpal tunnel syndrome, and denial by the claimant of any numbness or tingling. An MRI scan had been recommended, although the claimant declined. The claimant was shown to continue to work since her injury but wore a wrist brace. She reported that use of her arm at work increased her pain, although she continued to work in spite of it. Examination revealed diffused tenderness about the shoulder but had no specific point of tenderness. Her muscle strength was 5/5, and the Jobe's test was mildly painful. Forward flexion and internal rotation was mildly painful. She had full range of motion of the neck and no evidence of radicular findings. Tinel's was negative and median compression test was negative. The assessment was left shoulder, neck and arm chronic musculoskeletal strain. Dr. Nonwelier was of the opinion that the claimant's complaints were related to repetitive use of her arm, but no additional medical treatment was necessary or recommended (Exhibit 3F, page 7)..

[R. 20]. The ALJ incorporated in his RFC assessment Dr. Nonweiler's report that plaintiff's complaints were related to "repetitive use of her arm" in that he placed the restriction of no work above shoulder level and no work that required constant use of her hands for repetitive tasks. [R. 17].

Furthermore, the ALJ set forth substantial medical evidence in his decision to support his RFC assessment. Aside from a fracture to her foot in 1999 and a fractured nose in 2003, plaintiff has no history of chronic diseases, and she tested negative for rheumatoid factor, and as previously shown by Dr. Battenfield's 2004 records, plaintiff's X-rays and EMG testings were negative. [R. 19]. Additional testing in 2005, by Dr. Bryan Hawkins, M.D., revealed negative EMG and nerve conduction studies for neuropathy or other nerve involvement. No recommendation for surgery was made by any physician. The workers' compensation physicians all recommended conservative medical therapy. The ALJ pointed out that plaintiff continued to work and that Dr. Hawkins opined that plaintiff's "problem was considered fixed and stable at that time." [R. 20]. The ALJ also considered the opinion of Dr. Steven Y. M. Lee, M.D., who reviewed plaintiff's medical records and conducted a consultative physical examination on May 19, 2006. Dr. Lee diagnosed plaintiff with

10

"arthritis of both ankles by history, history of plantar fasciitis of both feet, history of left wrist tendonitis, probable arthritis of the left shoulder by history, pinched nerve on the right side by history, arthritis of the lower back, by history." [R. 20]. However, Dr. Lee's physical examination indicated that plaintiff's condition was limiting but not disabling. The ALJ recorded Dr. Lee's findings:

> Examination revealed clear lung fields and no heart murmurs. Examination of the ankles, feet, left wrist and left shoulder revealed normal range of motion with no evidence of joint deformity, swelling, or tenderness. The soles of the feet were not tender when examined. There were no varicose veins and ankles were not swollen. There was no tenderness over the spinous processes, sacrum, sacroiliac joints, or costovertebral angles. Flexion, extension and lateral bending of the back was normal. Straight leg raising was negative bilaterally. The claimant was able to manipulate small objects and handle tools with either hand. The claimant was able to walk without an assistive device and her gait, in terms of speed, stability and safety, was within normal limits.

[R. 20]. The ALJ also reviewed the medical records of Dr. Michele Coulter D.O. dated June 19, 2006. Dr. Coulter believed that plaintiff could sit, stand, walk, and lift without any problems, although an estimated weight could not be established due to plaintiff's chronic arthritis in her back. He found she had no trouble handling objects, hearing, speaking, traveling or engaging in mental activities such as understanding, memory, sustained concentration, persistence or social interaction and adaptation. [R. 20].

The ALJ also considered the diagnostic imaging report which was ordered by Dr. Suzanne Roberts, M.D., a state medical consultant, in response to Dr. Battenfield's report that plaintiff could lift no more than 10 pounds and push or pull no more than 20 pounds. Dr. Roberts requested current X-rays of plaintiff's knees, back, and spine. [R. 375]. The report did not reveal any disabling condition, and the ALJ considered the report in his RFC assessment:

> Consultative X-ray interpretations on September 25, 2006 revealed no acute process

of the right knee with no fracture or dislocation, normal joint spaces and normal degree of mineralization. There was no acute process of the left knee with no fracture or dislocation, normal joint spaces, and normal degree of demineralization. X-rays of the lumbar spine revealed minimal spondylosis with mild facet arthrosis at L5-S1, intervertebral disc spaces were well maintained, and atherosclerotic plaque was seen within the aorta. The overall impression was mild facet arthrosis at L5-S1 and atherosclerotic vascular disease (Exhibit 10F, page 3).

[R. 20]. Dr. Roberts also reviewed plaintiff's medical records. The ALJ found credible, and relied on, Dr. Roberts' opinion that plaintiff had the physical capacity to perform light exertional work. [R. 21]. The ALJ noted that Dr. Thurma Fiegel, M.D. conducted an independent review of plaintiff's medical records and concurred with Dr. Roberts' opinion. [R. 21]. After considering the objective evidence, the testimony at the hearing, and plaintiff's activities of daily living, the ALJ weighed the opinions of the various nontreating physicians of record and he gave "great weight" to the opinions of the consultative examiners and medical consultants, concluding that their opinions were consistent with his assessment of plaintiff's RFC. [R. 23]. The ALJ gave "little weight" to the reports of Dr. Kenneth Trinidad, D.O. as reflected in his 2004 and 2005 evaluation of plaintiff's workers compensation claims. [R. 23, 164]. The ALJ properly noted that Dr. Trinidad's reports were not conclusive for claims made under the Social Security Act. The ALJ explained that his conclusion was supported by applicable law:

> The Administrative Law Judge gives little weight to the opinion of Dr. Trinidad, a consultative examiner for workers' compensation purposes, as Dr. Trinidad was not the claimant's treating physician and his opinion does not include complete disability (Exhibit 15F). Such statements, made in the context of a state workers' compensation claim, are not dispositive of a claim made under Social Security. In a workers' compensation evaluation, the issue is a claimant's capacity to perform work existing with a particular employer. By contrast, under Social Security, the issue is the claimant's residual functional capacity to perform work that exists in the much broader, national economy. While a workers' compensation finding of temporary total disability may have some value in assessing the residual functional capacity of a Social Security claimant, it cannot be given controlling weight. Accordingly, the undersigned gives only some weight to the claimant being on

12

temporary disability pursuant to state law.

[R. 23].

The ALJ found, through resort to substantial evidence, that plaintiff can perform her past duties associated with pottery scraper, flagger, and fast food worker as she performed them and as they are described in the Dictionary of Occupational Titles.  Plaintiff has not shown otherwise in this appeal.

## RECOMMENDATION

The undersigned finds that the ALJ's decision at step four of the sequential analysis is supported by substantial evidence and that the correct legal standards were applied.  Accordingly, the undersigned RECOMMENDS that the Commissioner's decision be affirmed.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by December 16, 2010.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to:

> determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions."  United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir.

13

1996) (quoting <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

 SUBMITTED this 2nd day of December, 2010.


_____
T. Lane Wilson
United States Magistrate Judge